# CHARLESTON.

## STATE v. DUSHMAN.

Submitted February 27, 1917.   Decided March 6, 1917.

1.  JURY—*Challenge—Statutory Provision.*

    By section 3, chapter 159, Code 1913, one accused of a felony is entitled as a matter of right to a panel of twenty jurors, unexceptionable under the rules of the common law, before being called upon to exercise his right of peremptory challenge.   (p. 748).

2.  SAME—*Disqualification—Interest.*

    An employee of a railway company prima facie is disqualified to sit as a juror in the trial of one indicted for stealing or buying and receiving property of the railway company alleged to have been stolen.   (p. 749).

3.  CRIMINAL LAW—*Opinion Evidence.*

    The opinion of a witness, not an expert, as to any fact in issue before the jury is not generally admissible, unless from the very nature of the subject in issue it cannot be stated or described in such language as will enable persons not eye witnesses to form an accurate judgment regarding it, and an opinion based on an inconclusive fact and argumentative in character should not be admitted.   (p. 750).

4.  RECEIVING STOLEN GOODS—*Evidence—Knowledge.*

    On the trial of one accused of buying and receiving stolen goods, knowing them to have been stolen, evidence that such goods were bought and sold in the same market by and from individuals, mining companies, and manufacturing concerns, and is merchandise commonly on the market, is properly admissible on the question of the guilty knowledge of the accused and the bona fides of the transaction.   (p. 753).

Error to Circuit Court, Cabell County.

Ben Dushman was convicted of receiving stolen goods, and he brings writ of error.

*Judgment reversed, verdict set aside, new trial awarded.*

*Daugherty & Riggs,* for plaintiff in error.

*A. A. Lilly,* Attorney General, and *John B. Morrison* and *J. E. Brown,* Assistant Attorneys General, for the State.

MILLER, JUDGE:

Indicted, tried, found guilty, and sentenced to imprisonment in the penitentiary for the term of three years for unlawfully and feloniously buying and receiving certain pieces of brass of the value of sixty dollars, of the goods and chattels of the Chesapeake & Ohio Railway Company, lately before feloniously stolen, taken and carried away, well knowing the same to have been so feloniously and unlawfully stolen, taken and carried away, defendant by the present writ of error seeks reversal of the judgment.

The first point of error in logical sequence is that the court below on impanelling of twenty jurors, and on their voir dire, denied counsel for the prisoner the right or privilege of inquiring whether they were employees of the Chesapeake & Ohio Railway Company, the company whose property was alleged to have been stolen, and who stated that three of said jurors, namely, H. L. Clark, Mandeville Crawford, and Joseph Merritt, if he was permitted to ask of them would say that they were then in the employ of said railway company.

By section 3, chapter 159, Code 1913, one accused of felony is entitled as a matter of right to a panel of twenty jurors who according to the common law must be *omni exceptione majores,* before exercising his right of peremptory challenge. 2 Cooley's Blackstone, Book III, (4th ed.) p. 1124, star page 363; *State* v. *Johnson and Devinney,* 49 W. Va. 684, Syl. 2; *Hufnagle* v. *Deleware & Hudson Co.,* 227 Pa. St. 476. In *Melson* v. *Dickson,* 63 Ga. 682, 36 Am. Rep. 128, the court said: "The defendant had the right to a panel of twenty-four from which to strike—all twenty-four impartial men. *Mayor of Columbus* v. *Gaetchins,* 7 Ga. 139; *Justices* v. *Griffin & W. P. Plank Road Co.,* 15 *Id.* 39; *Howell* v. *Howell,* 59 *Id.* 145. He was denied this right and was forced to exhaust four strikes upon two brothers and two cousins of the opposing parties who had an interest, a pecuniary interest, in the verdict and judgment they were pressing to obtain. The denial was erroneous and hurtful. A big part of the battle is the selection of the jury, and an impartial jury is the cornerstone of the fairness of trial by jury."

The question then is, is an employee of a railway company disqualified *propter affectum,* for suspicion of bias or partiality, to sit as a juror? We held in *State* v. *Hatfield,* 48 W. Va. 561, that the object of the law, in all cases in which juries are impanelled to try the issue, is to secure men for that responsible duty whose minds are wholly free from bias or prejudice, either for or against the accused, or for or against either party in a civil case. And our statute, section 17, chapter 116, Code 1913, provides specifically that: "Either party in any action or suit may, and the court shall, on motion of such party, examine on oath any person who is called as a juror therein, to know whether he is a qualified juror, or is related to either party, or has any interest in the cause, or is sensible of any bias or prejudice therein; and the party objecting to the juror may introduce any other competent evidence in support of the objection; and if it shall appear to the court that such person is not a qualified juror or does not stand indifferent in the cause, another shall be called and placed in his stead for the trial of that cause."

At the common law the principal causes of challenges, prima facie disqualifying jurors, were: (1) Kinship to either party within the ninth degree; (2) was arbitrator on either side; (3) that he has an interest in the cause; (4) that there is an action pending between him and the party; (5) that he has taken money for his verdict; (6) that he was formerly a juror in the same case; (7) that he is the party's master, servant, counsellor, steward, or attorney, or of the same society or corporation with him; and causes of the same class or founded upon the same reason should be included. Our statute does not remove these common law disabilities; and it has been held that unless superseded by express terms they remain in force as common law disabilities. *Crawford* v. *United States,* 212 U. S. 183, 53 L. ed. 465.

All authorities agree that if a juror offered is related to the party, occupies the relation of master, servant, etc., he may be challenged for cause. Here, strictly speaking, the railway company is not actually a party; but it is certainly interested in this prosecution; its employees would certainly not be competent jurors to sit in the trial of an action against

defendant for the value thereof or the recovery of the specific property stolen. Is it not so interested in the result of this prosecution as to make the reason for the rule applicable? We are disposed to hold that it is, and that its employees offered as jurors would presumptively be subject to some bias or prejudice, or be under some control or influence of the corporation. In *Dimmack* v. *Wheeling Traction Co.*, 58 W. Va. 226, point 2 of the syllabus, we held, that an employee of a stockholder or manager of a corporation was not prima facie, and on that ground alone, disqualified as a juror in an action in which the corporation was a party; this upon the ground that the relationship to the party was too remote. In *Hopkins* v. *State of Florida*, 52 Fla. 39, the court was unanimously of the opinion that it is the better practice in cases like the one at bar to excuse jurors who are employees of a railway corporation, but were equally divided in opinion as to whether the trial court could be held in error for refusing to do so. But in *Berbette* v. *State*, (Miss.) 67 So. 853, the Mississippi court held, in a case exactly like the case at bar, that the court erred in denying defendant's challenge of a juror for cause because he was an employee of the corporation from which the property was alleged to have been stolen. In *Burtnett* v. *Burlington & M. R. R. Co.*, (Neb.) 20 N. W. 280, the court held that an employee of a railroad company was incompetent to sit as a juror in a case where the company is a party. In *State* v. *Coella*, 3 Wash. 99, it was held that: "Under Code 1881, §§212 and 1078, the former employer of a decedent is disqualified as a juror in a trial for his murder." In view of our statute and these authorities we hold that prima facie an employee of a railroad company is disqualified to sit as a juror in the trial of one accused of the larceny of its property, or where one as in this case is about to be put upon his trial for buying or receiving such property knowing it to be stolen, and that the court below erred in denying defendant the right to inquire of or prove by them or others that the three jurors offered and impanelled were related to the railway company as employees.

The next point is that the court below, over objection by defendant's counsel, erroneously permitted the witness Beck-

elheimer, in answer to the question, whether defendant knew
the brass was stolen, to say that: ''He couldn't help knowing
it, Judge, because it was branded there. *If I get hold of
anything that belongs to you or has your name on it I am
bound to steal it; you dont give it to me.*'' The ground of
objection was that this was opinion evidence of an ordinary
witness, not an expert, and inadmissible under the general
rule. Such is the law. *State* v. *Musgrave,* 43 W. Va. 672,
Syl. 4; 2 Jones Commentaries on Evidence, section 359. But
the attorney general replies that this answer falls under an
exception to the general rule, where, as often happens, it is
impossible for a witness to detail all the pertinent facts in
such a manner as to enable the jury to form a conclusion
without the opinion of the witness; and when the witness
may not be able to separate the facts and indications from
which he has formed a conclusion from the conclusion itself.
Mr. Jones, 2 Jones Commentaries on Evidence, section 360,
says: ''The ground upon which opinions are admitted in
such cases is, that, from the very nature of the subject in
issue, it cannot be stated or described in such language as
will enable persons not eye-witnesses to form an accurate
judgment in regard to it. The opinions of nonexperts are
admissible, therefore, provided they state, so far as prac-
ticable, the facts on which the opinions are based, on ques-
tions of identity as applied to persons, things, animals, or
handwriting; and of the size, color and weight of objects;
of time and distances; of the mental state or condition of
another; of insanity and intoxication; of the affection of one
for another; of the physical condition of another, as to health
or sickness (in which latter case, however, the opinion of a
nonexpert will not be heard upon the particular disease or
the cause thereof); of values; of the soundness of animals;
and of all subjects where it is not practicable nor possible to
put the jury in possession of all the primary facts upon which
the opinions of the witnesses are grounded.'' See, also, 1
Wharton on Criminal Evidence, (9th ed.) section 457. Ex-
amples illustrating the exception to the general rule are
found in the note to Mr. Jones' text cited; and Mr. Wharton
says: ''What is opinion? 'Did A shoot B?' C, a bystander,

answers, 'My opinion is that he did; I saw the pistol aimed; I heard the report; I saw the flash; I saw B fall down, as I supposed dead; from all this I infer that A shoot B.' This is all inference on the part of the witness, yet it is admissible.'' Illustrations are also found in our cases of *State* v. *Welch,* 36 W. Va. 690, where it was held that a witness may give his opinion that stains seen by him are blood stains, and that a certain large stain seen by him upon bed clothing was the stain of a pool of blood; and that a depression in a bed was from its shape and appearance caused by the head of a person, he having seen and examined it; and *Kunst* v. *City of Grafton,* 67 W. Va. 20, where witnesses, after describing as well as they could all the facts, and the appearances of the property viewed at or about the time of the injuries, were permitted to give their opinions as to the real cause of a slip or slide on plaintiff's lot. And other illustrations may be found in cases cited in 5 Ency. Dig. Va. & W. Va. Repts., 792, et seq.

Does the evidence of the witness objected to fall within the exception to the general rule? The first part of the answer is not a direct answer; he does not say positively that defendant did know the property was stolen, but that ''he couldn't help from knowing it'', and gives as a reason, ''because it was branded there.'' The rest of the answer is argumentative, and does not amount to even an opinion. Previously witness had testified that there were some twenty or more of the pieces of brass, and he could not tell whether all of these pieces were so branded, but said he saw as many as four or five, did not look at all of them. It would not follow conclusively that because some or all of the pieces of brass had some brand on them that defendant knew the property had been stolen, and an opinion based on that one fact would be of little value, if not wholly incompetent, and certainly the argument of the witness following was improper. It may be that the witness did not intend to limit his opinion to this one fact in evidence, but to other matters testified to by him and other witnesses. Such opinion evidence should only be admitted after the witness has detailed all the facts and circumstances to the jury, and if these can be placed before the

jury, and they are of such a nature that jurors generally are just as competent to form an opinion in reference to them and to draw inferences from them as the witness then the opinion of the witness should not be admitted.

The next point is, that the court erred in rejecting the evidence of Sam Abrahams to the effect that brass of the kind and character, described in the indictment in this case was bought and sold by all junk dealers in the City of Huntington, and is bought and sold in the open market by and from individuals, mining companies, and manufacturing concerns, and is merchandise which is commonly on the market. We are of opinion that this evidence should have been admitted. Of course it would not be conclusive, on the question of good faith, or want of knowledge of the stolen character of the property, but it evidences a fact which bore on the question of good faith or knowledge on the part of defendant that the property was stolen. "It is not necessary, however," says Mr. Greenleaf, quoted in *Watts* v. *State*, 5 W. Va. 532, "that the evidence should bear directly upon the issue. It is admissible, if it tends to prove the issue, or constitutes a link in the chain of proof."

Lastly, it is urged that the court below erred in overruling defendant's motion to set aside the verdict and to award him a new trial. It is said the evidence fails to show actual knowledge on the part of defendant that the property purchased was stolen. Of course this is an essential element of guilt and must be shown by positive proof of the fact, or of such facts as will satisfy the jury beyond a reasonable doubt that defendant is guilty. As the evidence may be different on another trial we refrain from expressing any opinion on the sufficiency of the evidence now before us. .

The judgment will be reversed, the verdict set aside, and defendant awarded a new trial.

*Judgment reversed, verdict set aside, new trial awarded.*