ARNOLD L. YOUNG

*v.*

JERRY O. ROSS

AND

DUTCH MILLER CHEVROLET, INC.

*v.*

JERRY O. ROSS

(No. 13189)

Submitted January 15, 1974. Decided February 19, 1974.

*George A. Daugherty* for appellant Ross.

*Steptoe & Johnson, Edward W. Eardley and Wayne A. Sinclair* for appellee Young.

BERRY, JUSTICE:

This is an appeal by Jerry Ross from a final order of the Circuit Court of Kanawha County entered June 25, 1971 wherein the Circuit Court denied Ross' petition for an appeal and supersedeas from a final judgment of the Common Pleas Court of Kanawha County entered December 23, 1971. The Common Pleas Court set aside the jury verdict of $40,000 in favor of Arnold Young and against Jerry Ross as to damages only but upheld the jury verdict as to the liability of Ross and further held that Ross could not recover against Young on Ross'

counterclaim. Young and Dutch Miller Chevrolet originally brought suit against Ross for damages suffered as a result of an automobile crash in which Ross and Young were involved. Dutch Miller Chevrolet was the owner of the car Young was driving at the time of the accident and sought to recover from Ross the amount of the damage to the car. This Court granted Ross' appeal on January 31, 1972. Ross' motion for leave to move to reverse was granted on June 11, 1973, and on September 6, 1973 the case was continued generally and on January 15, 1974 the case was submitted for decision on the arguments and briefs filed on behalf of the respective parties. Subsequent to the granting of the appeal and prior to oral arguments in this Court, the claims of Young and Dutch Miller Chevrolet against Ross were settled out of court.

The accident which precipitated the foregoing proceedings occurred on February 13, 1967 at approximately 9:15 p.m. At approximately 9:00 p.m. that evening Jerry Ross, who was an employee of the State Road Commission, received a call at his home informing him that there was a rock slide north of Pinch, West Virginia which was blocking or partially blocking Route 47. Ross was told to proceed to the slide area in his pick-up truck to secure the slide. The weather at the time of the accident was cloudy with patches of fog but apparently visibility was not impaired at the scene of the accident. The road was dry.

Ross, accompanied by his two teen-age sons, drove north on Route 47 to the scene of the slide and observed that the northbound lane was completely blocked and the southbound lane was partially blocked. Ross drove around the slide in the left hand lane, continued down the road several hundred feet until he could turn around. He turned around and approached the slide in the southbound lane, drove by the slide and pulled his truck into the northbound lane facing south. Ross testified he left his parking lights on and that his truck was parked

at a slight angle in front of the slide which was about two and one-half feet at its highest point. Ross had several flares in the truck at the time of the accident.

Ross had just stepped out of the truck when his son told him that a car was approaching in the northbound lane. Ross got back into the truck but did not close the door. Ross testified he did not remember anything after that until Young's car crashed into the truck. One of Ross' sons testified that Ross turned his headlights on and off twice before Young's car collided with the truck. As Young crested a hill heading north he was apparently about 380 feet from Ross's truck and he testified he could see car lights in the atmosphere but denied he could see the actual headlights of Ross' truck. Counsel for the parties stipulated the accuracy of a map prepared by a civil engineer which was admitted into evidence and which indicated that Young, after reaching the crest of the hill, had an unimpeded view of the highway to Ross' truck for approximately 380 feet. On the other hand, Young's evidence was to the effect that because of slight dips in the road Young was not able to see the actual headlights of Ross' truck until he was almost upon the truck. Young testified he was driving about 45 to 50 miles an hour when he came over the crest of the hill and he slowed down one or two miles an hour as he approached Ross' truck. However, Young also testified that he didn't see the truck until he was about 50 feet from it and he was blinded by the lights on Ross' truck and that when he realized Ross' truck was in his lane and he saw the outline of the slide behind the truck, he immediately slammed on his brakes but it was too late to stop. At the place of the accident, the berm on the left side of the road driving north was very narrow and there was a steep embankment of which Young was aware when he made the decision to attempt to stop his car rather than try to maneuver around Ross' truck and the rock slide.

Two witnesses testified that they were driving north on Route 47 after the rock slide occurred but before Ross arrived on the scene and were able to stop their cars

before hitting the slide. Both were traveling 30 to 35 miles an hour and one testified that he slammed on his brakes and stopped just in time to avoid hitting the rock slide.

Three witnesses who arrived at the scene shortly after the accident testified that they observed skid marks in the northbound lane and their estimates of the length of the marks ranged from 35 to 50 feet. However, the investigating state trooper testified that he did not find any skid marks.

As a result of the collision, Young sustained serious injuries including the loss of one eye and Ross was also injured.

Ross contends on this appeal that several prejudicial errors occurred during the trial. However, he relies primarily on the contention that the trial judge should have directed a verdict in his favor against Young and Dutch Miller Chevrolet in their original action against him. He also contends that the court erred in giving a sudden emergency instruction on behalf of Young under the facts of this case and that Ross was entitled to a sudden emergency instruction which was refused. Ross also assigned as error the giving of, or the refusal to give, several other instructions by the court, but these assignments were only referrd to generally in his brief.

After the appeal was granted by this Court a written motion was filed advising the Court that the two cases against Jerry Ross had been settled and the motion prayed that the appeal be dismissed and that a deposit of $1800 for printing the record, which was made by the insurance carrier for Ross, be returned by the clerk of this Court. George Daugherty, who was representing Ross on Ross' counterclaim, moved that the appeal as to the counterclaim be heard and decided and not dismissed. The motion to return the $1800 deposit for printing costs was granted and the appeal as to the counterclaim was not dismissed. A motion was then made by Ross' attorney

on the counterclaim for leave to move to reverse, which motion was granted and the appeal was heard on the original record and typewritten briefs, in accordance with Rule IX, section 1 of the Rules of this Court, and Code, 58-5-25.

The principal assignment of error alleged by Ross on this appeal is the refusal of the trial court to grant Ross' motion for a directed verdict on Young's action against Ross at the conclusion of all the evidence, and the refusal to give a directed verdict instruction offered by Ross. The other assignments of error relate to the giving of, or refusal to give, certain instructions offered on behalf of Young and Ross, especially the instruction on sudden emergency offered by Young and given by the trial court, and the refusal to give the sudden emergency instruction offered by the defendant Ross.

Ross relies on the cases of *Darling v. Browning,* 120 W.Va. 666, 200 S.E. 737; *Divita v. Atlantic Trucking Company,* 129 W.Va. 267, 40 S.E.2d 324; and *Wolfe v. Beatty Motor Express, Inc.,* 143 W.Va. 238, 101 S.E.2d 81, to support his contention that the trial court committed error in failing to direct a verdict against Young. It is true that directed verdicts against the plaintiffs were held to be proper in these cases where the plaintiffs' vehicles were driven into the rear of vehicles stopped on the highway. Each of these cases was decided on the facts, and, in effect, held that the plaintiff was not using reasonable care under the circumstances. However, the *Darling* case recognized the principle that a directed verdict for the plaintiff would not be proper where a sudden emergency situation was involved.

It has been held in many cases that it is negligence or contributory negligence as a matter of law to drive a motor vehicle at such a rate of speed that it cannot be stopped in time to avoid hitting an object within the driver's range of vision. *Hansen v. Clyde,* 89 Utah 31, 56 P.2d 1366, 104 A.L.R. 943; 8 AM. JUR. 2d, *Automobiles and Highway Traffic,* § 720. However, it has also been held

that where a motorist unexpectedly comes upon a vehicle standing or parked on a highway and runs into it he is not guilty of negligence as a matter of law, and the question is one of fact for jury determination. *Knaus Truck Lines v. Commercial Freight Lines,* 238 Iowa 1356, 29 N.W.2d 204; 8 AM. JUR. 2d, *Automobiles and Highway Traffic,* § 721.

In the recent case of *Wagner v. Sine,* decided by this Court on December 21, 1973, it was held that the driver of a truck who ran into a severed telephone pole lying across the highway at night was not guilty of contributory negligence as a matter of law in his action to recover from the defendant who had collided with the pole severing it. The Court held that it was for the jury to decide whether or not the plaintiff had been confronted with a sudden emergency.

Ross testified in this case that he parked his truck in front of the rock slide facing south in a northbound traffic lane, with his parking lights on. His son testified that when Ross saw the Young car approaching in the northbound lane he flashed his lights on and off twice and the accident happened immediately afterwards. Young testified that he did not see the truck until he was about fifty feet from it, that he was blinded by the lights on Ross truck; that when he realized Ross' truck was in his lane he immediately slammed on his brakes but was unable to stop before hitting Ross' truck. It was held in point three of the syllabus of the case of *Fleming v. Hartrick,* 100 W.Va. 714, 131 S.E. 558, that: "The general rule requiring the driver of an automobile to maintain a speed sufficiently slow to have such control of it that he can stop it within the distance in which he can plainly see an obstruction of danger, does not apply to a case where a dangerous situation which he has no reason to expect suddenly appears in front of his car." The cases holding that it is negligence as a matter of law to drive a motor vehicle at such a rate of speed that it cannot be stopped within the range of the driver's vision are subject

to the exception of the sudden emergency doctrine. See Annot., 97 A.L.R. 546, and *Oldfield v. Woodall*, 113 W.Va. 35, 166 S.E. 691.

In the case of *Poe v. Pittman*, 150 W.Va. 179, 144 S.E.2d 671, a sudden emergency instruction was given on behalf of the plaintiff and the defendant contended on appeal that the giving of such instruction was error. This Court stated, in connection with the matter, that: "Where, however, in a case tried by a jury, the evidence relating to the question of sudden emergency is conflicting or where such evidence, though undisputed, is such that different inferences may properly be drawn therefrom by reasonable men, it is for the jury to determine whether the party relying on the sudden emergency doctrine was confronted with a sudden emergency; the nature and extent of the emergency; whether the emergency was created by him, in whole or in part; and whether he, in the emergency, conducted himself as a reasonably prudent person would have conducted himself in the same or like circumstances."

The sudden emergency instruction offered on behalf of the defendant Ross, which he contends was error for the court to refuse to give to the jury, reads as follows:

> "The Court instructs the jury that it is not negligence in law for a person to act unwisely in a sudden emergency which he himself had no part in creating. If the circumstances require that he make an immediate and hasty decision with no time for thought or consideration, then he is required to exercise only such judgment as a reasonable and prudent person would exercise under the same or similar circumstances, and even though it later appears that a resulting accident could have been avoided if a different course had been pursued, he will not be held liable for having pursued a different course so long as he has acted with reasonable care in view of the emergency conditions and the lack of time for considering his actions, for the law makes allowance for errors of judgments in this case.
> "* * * and if you further believe that after

> placing his truck in the position in which he testified, that Jerry Ross was thereafter suddenly confronted with the Young automobile approaching him in the northbound lane of traffic at a high rate of speed and that Jerry Ross attempted to warn the approaching vehicle by blinking his headlights and that in so doing, he acted as a reasonably prudent person under the same or similar circumstances and conditions, then his actions in that regard are not negligence even though you may now believe that another course of action would have been more prudent at the time."

This instruction was properly refused under the facts of this case. Assuming that Ross was confronted with a sudden emergency when he observed Young's car traveling down the hill towards the truck, there is no question that Ross himself created the emergency situation by pulling in front of the slide facing south in the northbound lane. Thus Ross is precluded from benefiting from the sudden emergency doctrine. It is uncontradicted that Ross placed the truck in Young's lane of traffic sometime before the accident. The case of *Young v. Ross* was settled out of court and no instruction on sudden emergency was offered by Ross as plaintiff in the counterclaim at the trial of the case.

The questions of negligence, contributory negligence, and sudden emergency are questions for jury determination. *Davis v. Sargent,* 138 W.Va. 861, 78 S.E.2d 217; *Campbell v. Campbell,* 146 W.Va. 1002, 124 S.E.2d 345. This principle is clearly stated in point 2 of the syllabus of the case of *Skeen v. C and G Corporation,* 155 W.Va. 547, 185 S.E.2d 493, which reads as follows:

> "It is the peculiar and exclusive province of a jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed."

Where a motion for a directed verdict is made, all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed. The court must have assumed as true those facts testified to by Young which were properly admitted into evidence in connection with the matter. This principle is clearly stated in the syllabus of the case of *Nichols v. Raleigh-Wyoming Coal Co.*, 112 W.Va. 85, 163 S.E. 767, and quoted in the syllabus of *Perry v. Scott*, 134 W.Va. 380, 59 S.E.2d 652, in the following language: "Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence."

It was not error for the trial court to refuse to direct a verdict in favor of Ross in the trial of this case. It would also appear under the facts in the case at bar that it was not error for the trial court to give the instruction of sudden emergency for Young and to refuse to give the instruction offered by Ross on sudden emergency.

The other instructions which Ross cites as error on the part of the trial court for either giving or refusing to give were not briefed, but would not be considered error in light of the holding that the sudden emergency instruction on behalf of Young was proper.

For the reasons stated herein, the motion to reverse is denied and the judgments of the Common Pleas Court and the Circuit Court of Kanawha County are affirmed.

*Motion to reverse denied;*
*judgments affirmed.*