JAMES EUGENE LEWIS

*v.*

ROBERT M. KIRK

(No. 15017)

Decided November 3, 1981.

---

*Hudgins, Coulling, Brewster & Morhous* and *Lawrence E. Morhous*, for appellant.

*Lewis, Ciccarello, Masinter & Friedberg, Arthur T. Ciccarello* and *John A. Rollins*, for appellee.

PER CURIAM:

The appellant, James Eugene Lewis, instituted this personal injury action to recover damages for injuries sustained in a collision between an ambulance and an automobile driven by the defendant, Robert M. Kirk. Lewis was being transported in the ambulance to a hospital following a motorcycle-automobile collision which occurred a short time earlier. The jury returned a verdict in favor of Kirk, and the trial court denied Lewis' motions for judgment notwithstanding the verdict and to set aside the verdict and grant a new trial. At trial, the court gave a "sudden emergency" instruction in favor of Kirk over the timely and specific objection that Kirk was not entitled to such an instruction because he created, in whole or in part, the situation allegedly constituting the sudden emergency. We agree with Lewis that the trial court committed reversible error in giving the sudden emergency instruction and, accordingly, we reverse and set aside the judgment and remand for a new trial.

The collision giving rise to this action occurred on July 31, 1973, at approximately 12:30 p.m. on U.S. Route 52 in Bluewell, Mercer County, West Virginia. It was a clear, dry day, and the ambulance was proceeding in a southerly direction through the business district of Bluewell toward

the city of Bluefield. As it proceeded through Bluewell, with its siren sounding and its emergency lights operating, the ambulance encountered a line of traffic consisting of five or six cars in the southbound lane of U.S. Route 52, which, at this point, was a two-lane highway. When the line of vehicles stopped, the ambulance proceeded around them in the northbound lane, but the lead automobile, operated by Kirk, made a left turn across the northbound lane directly in front of the ambulance. The ambulance driver applied the brakes but was unable to avoid a collision.

The ambulance driver and the attendant who was riding with Lewis testified that at the time of the accident the ambulance was traveling at no more than thirty-five miles per hour. The ambulance driver also testified that he was only one to one and one-half car lengths from the rear of Kirk's vehicle at the time it turned in front of the ambulance. The attendant said that Kirk's vehicle was at most one car length from the ambulance when it made the left turn. An eye witness to the collision testified that the ambulance was two or three car lengths from Kirk's vehicle when it cut to the left in front of the ambulance.

Kirk testified that he heard the ambulance's siren approaching from the rear, that he stopped for approximately thirty seconds and put on his left turn signal, and that he looked in his rear view mirrors. He stated that he did not see the ambulance coming from the rear and then made the left turn. He stated that at the time of the collision his rear tires were still on the pavement on the left lane of the highway. Although he was not certain that the ambulance driver could have avoided the collision had he turned to the right to avoid the rear end of his car, Kirk did state that there was one whole lane open to the ambulance driver.

At the trial of the case, the trial court and the parties recognized that they were not dealing with a case of a collision between two ordinary vehicles. There was no dispute that at the time of the collision the ambulance was an authorized emergency vehicle under *W. Va. Code,*

17C-9-5, and the jury was so instructed.* This statute provides that where an emergency vehicle has its siren and flashing lights in operation, the driver of every other vehicle must yield the right of way and immediately drive to a position parallel to, and as close as possible to, the right-hand edge of the roadway clear of any intersection and stop and remain there until the emergency vehicle has passed. The statute also includes a subsection providing that the driver of an emergency vehicle is not relieved of his duty to drive with due regard for the safety of all persons using the highway.

West Virginia recognizes the sudden emergency doctrine of tort law under which the driver of a motor vehicle is held to a reduced or more lenient standard of care when suddenly confronted with an emergency situation. *See, e.g., Ratlief v. Yokum,* ___ W. Va. ___, 280 S.E.2d 584 (1981). There is, however, a well-recognized and longstanding limitation on this rule, namely that a party cannot rely on the sudden emergency doctrine when the emergency is created in whole or in part by his own actions. In syllabus point 1 of *Henthorn v. Long,* 146 W.Va. 636, 122 S.E.2d 186 (1961), the court expressed the rule, in a case quite similar to the instant case, in the following manner:

> "In an action for damages for personal injuries or for wrongful death arising from the operation of a motor vehicle on a public highway, a defendant will not be permitted to rely on the emergency doctrine as a defense where his own action has created, in whole or in part, the situation which is alleged by him to constitute the sudden emergency.

*See also,* syl. pt. 1, *Lilly v. Taylor,* 151 W.Va. 730, 155 S.E.2d 579 (1967); syl. pt. 3, *Korzun v. Shahan,* 151 W.Va. 243, 151 S.E.2d 287 (1966), *quoting,* syl. pt. 10, *Crum v. Ward,* 146 W.Va. 421, 122 S.E.2d 18 (1961); syl. pt. 10,

---

\* *W. Va. Code,* 17C-2-5 permits the driver of an authorized emergency vehicle in specified circumstances to violate certain enumerated traffic laws. *See also, Davis v. Cross,* 152 W.Va. 540, 164 S.E.2d 899 (1968).

*Elswick v. Charleston Transit Co.*, 128 W.Va. 241, 36 S.E.2d 419 (1945); syl. pt. 2, *Cline v. Christie,* 117 W.Va. 192, 184 S.E. 854 (1936). 57 Am.Jur.2d *Negligence* §93 (1971).

While it is true that questions relating to the sudden emergency doctrine are ordinarily for the jury, including the question of whether the emergency was created in whole or in part by the party who seeks to benefit from the doctrine, *see,* e.g., syl. pt. 3, *Young v. Ross,* 157 W.Va. 548, 202 S.E.2d 622 (1974), we are of the opinion that Kirk was not entitled to jury resolution of these issues in this case. There is no substantial dispute in the evidence bearing on the sudden emergency issue, and we believe there was no testimony presented from which a jury could have reasonably found that the defendant was confronted with a sudden emergency which was not created in whole or in part by his own actions.

It is beyond dispute that Kirk did not observe the provisions of *W. Va. Code,* 17C-9-5. Kirk was driving the lead car in the line of traffic and by his own testimony he knew the ambulance was approaching from the rear. He stopped the vehicle for approximately thirty seconds before making the left hand turn. At this point he clearly was not in any way imperiled. Rather than pulling over to the right hand side of the road and stopping until the emergency vehicle passed, as required by the statute, he made a left turn directly in front of the on-coming ambulance.

We reject the proposition that the presence of the ambulance created a sudden emergency for Kirk within the contemplation of the sudden emergency doctrine. The mere presence of an emergency vehicle on the highway is a circumstance which should reasonably be anticipated to occur. Kirk clearly created whatever sudden emergency existed in this case by his own conduct in violation of the state law. If there was a sudden emergency in the instant case as contemplated by the law, it was the situation confronting the ambulance driver when Kirk drove his vehicle to the left in front of the ambulance. In any event, we are of the opinion that there was no evidence supporting a factual determination that Kirk was confronted with

a sudden emergency which was not created in whole or in part by his own negligence.

Lewis also contends that in view of the law and the facts in the case he was entitled to a directed verdict on the question of Kirk's liability. We have carefully considered this issue and conclude the trial court did not err in refusing to direct a verdict in favor of Lewis on liability. Although we agree that Lewis had a strong case on the liability issue, we cannot say that he is entitled to a directed verdict when all reasonable inferences from the evidence on the issue of proximate cause are resolved in favor of the appellee.

For the reasons enunciated in this opinion, the judgment of the Circuit Court of Mercer is reversed, the verdict is set aside and a new trial is awarded.

> *Judgment reversed;*
> *verdict set aside;*
> *new trial awarded.*